UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | | |
|---|---|---|
| ELIZABETH HANLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-413-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| CHEVY CHASER MAGAZINE, LLC | ) | **MEMORANDUM OPINION AND ORDER** |
| d/b/a Chevy Chaser Printing, | ) | |
| d/b/a Smiley Pete Publishing, | ) | |
| d/b/a Southsider Magazine, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHARLES CREACY, | ) | |
| Individually, | ) | |
| | ) | |
| Defendants. | ) | |

**        **        **        **        **

This matter is before the Court on Defendants' motion for summary judgment [Record No. 31].  Fully briefed, the matter is now ripe for review.

**FACTUAL BACKGROUND**

Defendant, Chevy Chaser Magazine, LLC ("Chevy Chaser"), is a Kentucky limited liability company co-owned by Charles Creacy ("Creacy") and Chris Eddie ("Eddie").  Chevy Chaser publishes two monthly community magazines and operates a small print shop.  During the relevant time period, Chevy Chaser employed approximately ten people, including Creacy and Eddie.  Creacy served as the chief salesman and performed other supervisory duties.  Eddie primarily supervised the production of the

1

magazines.   Both Creacy and Eddie served as "publishers" of the magazines and shared the responsibility of managing the office. Amber Scott served as editor of both magazines; her duties involved content issues including relationships with the writers.   Rose Deller worked as the print shop manager, and her duties included answering the telephone and running errands.

Plaintiff, Elizabeth Hanley ("Hanley"), was hired in February 2002 as a sales person and soon thereafter became sales manager. Creacy asserts that she was hired based upon her prior experiences, but also because she was a life-long friend of Creacy's wife, Susan.   Towards that latter part of 2003, Creacy started noticing problems with the accounts Hanley was handling.   Consequently, Creacy began to review her accounts and contact her customers.   As a result of this inquiry, Creacy found that mistakes were being made, primarily advertisements being run which were not authorized. Hanley's compensation was, in large part, based on commissions. Commissions were paid monthly based on amounts invoiced rather than on amounts collected.   In other words, the more ads sold and invoices generated the larger the commissions.   Creacy and Eddie determined that Hanley had run and invoiced a number of ads which had not been authorized by customers.   Thus, Hanley was being paid commissions for sales that did not exist.   On November 29, 2003, Creacy and Eddie terminated Hanley's employment citing problems with her accounts as the reason for her termination.   Hanley admits

to making mistakes, but contends that the problems were the result of being subjected to unlawful sexual harassment.

Following Hanley's termination, Chevy Chaser employees continued to review her accounts; they began to suspect that Hanley had intentionally falsified her billings. Various factors supported the suspicions. For instance, at the time Hanley was terminated, she told Creacy and Eddie that "she was going to pay it back." Additionally, several of Hanley's customers stated in writing that advertisements for their businesses were run in the magazines but were not authorized. Furthermore, many of the errors occurred in the issues published in October 2003, a month in which a special sales bonus program was in force. Creacy stated that Hanley had been working in her sales job for one and a half years at that time and had never made so many billing errors at one time. Finally, Hanley was having serious financial difficulties during this time period. After considering all of the evidence and consulting with legal counsel, Creacy decided to file a criminal theft complaint against Hanley and on behalf of Chevy Chaser. The complaint was filed on December 22, 2003. As a result of this compliant, on April 13, 2004, Hanley was indicted by a Fayette County Grand Jury for theft by deception, a Class D Felony. Following a jury trial, on May 3, 2005, Hanley was acquitted of the charges pending against her.

On August 9, 2004, four months after she was indicted and more

3

than eight months after she was terminated from Chevy Chaser, Hanley filed a civil complaint against the defendants in the Fayette County Circuit Court alleging unlawful sexual discrimination in employment pursuant to KRS 344,010, *et seq.* and Title VII of the Civil Rights Act of 1964, as amended.  The action was removed to this Court on September 3, 2004.  Shortly after the removal, on October 6, 2004, Hanley filed a motion to amend her complaint seeking to delete the phrase "and Title VII of the Civil Rights Act of 1964, as amended," from the prayer for relief.  Over Defendants' objection, the Court granted Hanley's motion.   The Court's order dated December 2, 2004, stated:

> the Court construes Plaintiff's motion as an election to drop what claims she may have under Title VII of the Civil Rights Act of 1964, as amended, in lieu of solely pursing remedies available under KRS 344.010 et seq.

[Record No. 15].  On May 19, 2005, Plaintiff made a second motion to amend her complaint for the purpose of adding a malicious prosecution claim; this claim was based on her acquittal of the state theft charges.  The motion was granted on May 20, 2005.  Thus, as it stands today, Plaintiff's complaint presents state law claims of sexual harassment and discrimination, outrageous conduct, and malicious prosecution.

According to the amended complaint, "[d]uring the fall of 2003, Creacy began a series of acts of sexual harassment that created a hostile work environment at the magazine offices.  He began to proposition Plaintiff as well as other employees, through

4

actions and words, requesting sexual advances." Complaint, ¶ 9. Plaintiff goes on to state that, "Creacy then began what appeared to be an extra-marital affair with another employee of the Chevy Chaser. Both Creacy and the employee flaunted the relationship at the office, and engaged in a pattern of sexually charged behavior that created a hostile work environment, and made it impossible for Plaintiff, due in part to her relationship with Creacy's wife, to work in a normal fashion." Complaint, ¶ 10. Plaintiff contends that this behavior resulted in "a sexually charged atmosphere." Complaint, ¶ 11. In sum, Plaintiff states that Creacy's "actions were unwelcome, unwanted and created an intimidating and hostile work environment" and that his "attempts to hit on Ms. Hanley were in effect attempts at quid pro quo sexual harassment." Complaint, Count I, ¶¶ B & C. Plaintiff further alleges that Defendant Chevy Chaser "intentionally retaliated against Plaintiff ... by terminating her when she rebuffed Creacy's advances." Complaint, Count II, ¶ B. Plaintiff contends that the above acts constitute actionable outrageous conduct. Complaint, Count III. Finally, Plaintiff states that her acquittal of the state criminal charges entitles her to a claim for malicious prosecution. Second Amended Complaint.

Plaintiff's claims of sexual harassment and/or discrimination stem from ten identifiable and separate incidents:

1. Creacy told Hanley he wanted to masturbate with her shirt (Hanley Deposition at 35-36);

2.   Creacy told Hanley, "it doesn't matter because you look
     so damn good," and Amber told her that Creacy said he
     wanted to bite Amber's right calf (Hanley Deposition at
     44-45);

3.   When Creacy would get mad at someone, he would berate
     that employee in front of others, would not speak to them
     and made them feel uncomfortable (Hanley Deposition
     Volume I at 49-51);

4.   Upon returning from a vacation in August of 2003,
     Creacy's comments became "more sexual" (Hanley Deposition
     Volume I at 55-57);

5.   In September of 2003, at The Melodeon, Creacy told Hanley
     he wanted to masturbate with her shirt.  Later that
     night, at Mia's Bar when Hanley was not present, Rose
     told Creacy she would have sex with him.  Creacy told
     Plaintiff what Rose had said that next Monday at work.
     (Hanley Deposition Volume I at 57-62);

6.   At opening day of Keeneland's 2003 fall meet, Creacy
     grabbed the butts of several employees, including
     Hanley's, and rubbed Rose's arm (Hanley Deposition Volume
     I at 41, 65);

7.   Later that same day, during dinner at The Phoenix, Creacy
     and Rose exchanged numerous sexual glances and, at one
     point, placed their feet in each other's crotches under
     the table (Hanley Deposition Volume I at 65-66);

8.   A few days later, Amber discovered sexually explicit e-
     mails sent between Creacy and Rose at the office; Amber
     printed them and shared copies with Hanley and other
     employees; they all suspected a sexual affair between
     Creacy and Rose; Hanley was devastated and mentally
     "checks out" (Hanley Deposition Volume I at 67-69, 73-76,
     80, 84);

9.   After Amber confronts Creacy and Eddie about the
     suspected sexual affair, which Creacy denies, Creacy and
     Rose continue to be "flirty" at the office (Hanley
     Deposition Volume I at 74-77, 81-82); and

10.  Rose got a free cell phone and a raise (Hanley Deposition
     Volume II at 97-99; Creacy Deposition at 90-93).

From Hanley's depositions, it appears that she was most upset

6

by the suspected sexual affair between Creacy, the husband of Hanley's best fried, and Rose, a female employee. Hanley concedes that, other than the ten incidents outlined above, there are no other acts of sexual discrimination/harassment of which she is complaining, and that any other things she did not see or hear have had no affect on her. (Hanley Deposition Volume I at 127-130).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Which facts are material is determined by the substantive law governing the case; only those facts that might affect the outcome of the suit will be considered material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the

7

movant establishes a prima facie basis for summary judgment, the nonmovant must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest upon mere allegations or denials but must set forth specific facts showing the existence of a material issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256-57.  Moreover, where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

## ANALYSIS

Reviewing the various complaints filed in this action (*i.e.,* the original state court complaint, the amended complaint, and the second amended complaint), the Court finds that Plaintiff's claims are as follows: (1) various Kentucky Civil Rights Act, KRS Chapter 344 ("KCRA") claims against Defendant Chevy Chaser; (2) an intentional infliction of emotional distress/outrage claim against Defendant Creacy; and, (3) a malicious prosecution claim against Defendants Chevy Chaser and Charles Creacy.  The Court will examine the validity of each of these claims below.

## I.   Kentucky Civil Rights Act[1]

---

[1] The Kentucky Supreme Court has held that the KCRA should be construed as federal courts have interpreted Title VII of the federal Civil Rights Act of 1964.  *American General Life &*

A.   <u>Hostile Work Environment</u>

Count I of Plaintiff's complaint asserts a hostile work environment sexual harassment claim under the Kentucky Civil Rights Act against Defendant Chevy Chaser. To establish a *prima facie* case of hostile work environment based on sex, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable. *Clark v. United Parcel Service, Inc.,* 400 F.3d 341, 347 (6th Cir. 2005). Here, Defendants contest whether Plaintiff has established the fourth prong of the aforementioned test - whether the alleged harassment created a hostile work environment.

For alleged harassment to be actionable, it must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986) (citation omitted). The most recent, relevant United States Supreme Court case on the issue, *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-23 (1993), explained that, in deciding whether the conduct in question was severe or pervasive enough to create an abusive

*Accident Ins. Co. v. Hall,* 74 S.W.3d 688, 691 (Ky. 2002). Thus, the relevant United States Supreme Court and Sixth Circuit authorities interpreting the requirements to sustain a claim of gender discrimination under Title VII are equally applicable to Hanley's KCRA claims.

working environment, the conduct must be judged by both an objective and a subjective standard. Thus, the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. *Id.* at 21-22. While the Court explained that all the circumstances should be considered, it suggested a non-exhaustive list of relevant factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Moreover, the Court held that it is "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victims's employment and create an abusive working environment,' [that] Title VII is violated." *Id.* at 21 (citations omitted).

While this claim is, perhaps, Plaintiff's strongest, she still ultimately loses. Plaintiff's deposition testimony cites to ten incidents of alleged sexual harassment. Admittedly inappropriate and lewd, when viewed as a whole, these incidents/comments do not rise to the level of a severe, pervasive and abusive hostile work environment. Only four of the incidents were specifically directed at Hanley: two comments about the desire to masturbate with

10

Plaintiff's shirt,[2] the "you look so damn good" comment, and the butt grabbing incident at Keeneland.[3]  Courts in this circuit have held that sexually suggestive comments and vulgar remarks are generally not enough to create an objectively hostile work environment.  *Swanson v. Livingston County,* 270 F. Supp. 2d 887, 894 (E.D. Mich. 2003) (*citing Black v. Zaring Homes, Inc.,* 104 F.3d 822, 826 (6th Cir. 1997); *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 790 (6th Cir. 2000)).  Moreover, the Sixth Circuit has instructed that the harassment should be ongoing rather than a set of isolated or sporadic incidents.  *Allen v. Michigan Dep't of Corrections,* 165 F.3d 405, 411 (6th Cir. 1999).  Although Hanley's allegations of harassment by Creacy could certainly be construed as distasteful, they are simply not substantial enough to satisfy the *prima facie* showing.

Moreover, it appears that Plaintiff takes most issue with the sexually explicit and admittedly private e-mails sent between Creacy and Rose Deller and the appearance of what she believed was an extra-marital affair between the two of them.  Although

_____

[2] The Court finds it notable that one of these comments occurred in a social setting at a local bar as opposed to in the workplace.

[3] There is some disagreement about whether the butt grabbing incident occurred at or outside the workplace.  Interestingly, Plaintiff alleges that it occurred at Keeneland racetrack (Hanley Deposition at 41, 64), whereas Creacy states that it happened at an office social gathering prior to leaving for Keeneland (Creacy Deposition at 38-41).

Plaintiff makes remote references to the effect that the Creacy/Deller relationship had on the environment at Chevy Chaser, there is insufficient evidence in the record for Plaintiff to survive summary judgment.  She alleges that the environment was "sexually charged and uncomfortable" and that the relationship interfered with her ability to work in a normal fashion, but she cannot survive summary judgment on these allegations alone.  If Plaintiff felt that Creacy's and Deller's interaction rendered the workplace a hostile environment, and that she suffered discrimination because of that environment, then she must make a showing to that effect.  This she has not done.  Moreover, while reading the sexually graphic e-mails sent between Creacy and Rose may have upset Plaintiff, they were not directed toward her nor were they ever meant to be read by her.  *See e.g.*, *Coles v. Kelly Servs., Inc.,* 287 F. Supp. 2d 25, 31 (D. D.C. 2003), *aff'd* 2004 W.L. 1627250 (D.C. Cir. July 20, 2004) (no hostile work environment claim where defendant sent ten sexually explicit e-mails directly to plaintiff).  Exposure to these private e-mails does not rise to the level required to sustain a hostile work environment sexual harassment claim.

Title VII was not meant to create a "general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Considering the totality of the circumstances presented here, the Court concludes that no jury could find that Hanley's work

environment was permeated with "discriminatory intimidation, ridicule, and insult," that was so severe or pervasive as to alter the conditions of her working environment.  As the conduct complained of does not appear to have been anything more than "merely offensive," the Court finds summary judgment appropriate.

B.   Quid Pro Quo Sexual Harassment

To prevail on a claim of quid pro quo sex discrimination under Title VII, an employee plaintiff must prove: (1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability.  *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 186 (6th Cir. 1992), *cert denied,* 506 U.S. 1041 (1992).

There is no argument that Hanley is a member of a protected class and that Defendant Chevy Chaser would be liable for Creacy's actions under the theory of respondeat superior.  The two factors in dispute here are whether Plaintiff was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors and whether Plaintiff suffered tangible job detriment

13

as a result of refusing to submit to Creacy's alleged sexual demands.

Hanley's complaint states that Creacy propositioned plaintiff through actions and words, requesting sexual advances, and that these actions were unwelcome and unwanted. The complaint further states that Hanley was terminated when she rebuffed Creacy's advances. In her deposition, however, Hanley completely backed off these allegations and stated, "He [Creacy] didn't make advances on me that I rebuffed." (Hanley Deposition Vol. I at 53). Since Hanely admits Creacy made no unwelcome sexual advances or requests for sexual favors, Plaintiff cannot made out a *prima facie* case of quid pro quo sexual harassment. Accordingly, this aspect of Plaintiff's complaint is summarily dismissed.

C.   Retaliation

Count II of Plaintiff's complaint states that Hanley was unlawfully retaliated against by being terminated "when she rebuffed Creacy's advances, and became unable to properly do her job as a direct result of the of the hostile work environment that pervaded the office." Complaint, Count II, ¶ B. A *prima facie* retaliation claim is established by showing the following: (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of [the plaintiff's] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal

14

connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir. 1987).

This claim has many fatal problems. First of all, Plaintiff's response memorandum states that the protected activity at issue here is "fighting off sexual harassment of Creacy, her knowledge of the supposed affair between Creacy and Rose Deller, and her relationship with Creacy's wife." Plaintiff's Response at 14. Of the above three factors, only "fighting off sexual harassment" qualifies as a protected activity under KRS Chapter 344. The problem, however, is that the record is devoid of evidence tending to show that Hanley "fought off" anything. Thus, the Court does not believe Plaintiff has shown that she was engaged in an activity protected by the KCRA.

Assuming for purposes of this motion that Plaintiff did indeed engage in the protected activity of "fighting off sexual harassment," Plaintiff's claim still fails as she has not established any causal connection between the supposed protected activity and her termination. Plaintiff seems to argue that such a connection can be made because Creacy, as a protectionist measure, had an interest in quelling Hanley's friendship with his wife. The argument seems to be that because Hanley believed Creacy was having an extramarital affair, and because Hanley was friends with Creacy's wife, in order to keep his wife from finding out

15

about the alleged affair, Creacy had Hanley fired.  Not only is this a very tenuous argument, it in no way relates to the alleged protected activity.  Thus, even if the Court were to find that Plaintiff was engaged in a protected activity, without demonstrating a causal connection between the termination and the protected activity, a *prima facie* case of retaliation cannot be established.

Because the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation, there is no need to address whether Defendants' articulated legitimate, nondiscriminatory reason for termination - serious billing errors with regard to numerous accounts causing Hanley's sales commissions to be improperly inflated and causing damage to Chevy Chasers' relationships with a large number of important customers - is preetextual.

## II.  Intentional Infliction of Emotional Distress/Outrage

Count III of Plaintiff's complaint states a claim of intentional infliction of emotional distress/outrage against both Chevy Chaser and Creacy.  In Hanley's response memorandum, however, she states this claim is directed at Creacy individually.

Under Kentucky law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability." *Craft v. Rice,* 671 S.W.2d 247, 251 (Ky. 1984).  The elements of proof necessary to

16

sustain a claim of outrageous conduct are: (1) intentional or reckless conduct on the part of the wrongdoer; (2) outrageous and intolerable conduct in that it offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 2-3 (Ky. 1990). Kentucky law requires that the conduct in question be "a deviation from all reasonable bounds of decency and ... utterly intolerable in a civilized community." *Id.* at 3 (citation omitted).

Kentucky courts have turned to the commentary to Restatement (Second) of Torts § 46 for guidance in assessing whether conduct is actionably extreme and outrageous:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs will necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no reason for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam ....

Restatement (Second) of Torts § 46 cmt. d (1965). There is no question that the comments complained of were crude, tacky, and tasteless, however, it is also clear that they do not meet the very high threshold associated with a cause of action for intentional

infliction of emotional distress.  Creacy's comments to Hanley, both in and outside the workplace, were limited and, while possibly upsetting, are a perfect example of society's rough edges to which a plaintiff is expected to become hardened to.  In addition, the sexually explicit, private e-mails sent between Creacy and Rose, and the subsequent discovery by Hanley, while perhaps offensive to a third party reader, are simply insufficient to support Plaintiff's claim of outrage.

Taken in the light most favorable to Plaintiff, the Court does not believe the conduct complained of rises to the level of outrageousness required by Kentucky law.  Thus, the Court sustains Defendants' Motion for Summary Judgment as to Plaintiff's claim for outrageous conduct and intentional inflection of emotional distress.

### III. Malicious Prosecution

Count IV of Plaintiff's complaint states a claim for malicious prosecution against the Defendants.  To prevail on a claim of malicious prosecution, Hanley must allege and prove:  (1) [T]he institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a

result of the proceeding. *Broaddus v. Campbell,* 911 S.W.2d 281, 283 (Ky. Ct. App. 1995). The burden in a malicious prosecution action is on the plaintiff to prove lack of probable cause, and the probable cause issue is a question for the court to decide. *Prewitt v. Sexton,* 777 S.W.2d 891, 894-95 (Ky. 1989).

Plaintiff states that ruling on this section of Defendants' motion should be delayed until discovery can be taken on the issue.[4] The Court disagrees. It is axiomatic that where there is a specific finding of probable cause in the underlying criminal action, or where such a finding is made unnecessary by the defendant's agreement or acquiescence, a malicious prosecution action cannot be maintained. In *Higgason v. Stephens,* the Sixth Circuit Court of Appeals stated that it is long settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause. *Higgason v. Stephens,* 288 F.3d 868, 877 (6th Cir. 2002). It is also clear that acquittal alone does not show malice or want of probable cause. *Conder v. Morrison,* 121 S.W.2d 930, 931 (Ky. 1938); *Jones v. Louisville & N.R. Co.,* 96 S.W. 793 (Ky. App. 1906). In this case, probable cause has *per se* been established by the grand jury indictment of Hanley. Thus, there was probable

---

[4] On June 20, 2005, the Court granted Plaintiff's motion for extension of time to complete discovery on the claim of malicious prosecution [Record No. 47]. Discovery on that limited issue was ordered to be completed on or before August 15, 2005.

cause for prosecution and no action for malicious prosecution can be sustained.  Further discovery could not change this outcome.

In a related argument, the Defendants contend that their reliance upon the advice of counsel constitutes a complete defense to Hanley's charge of malicious prosecution.  The Court agrees. Where malice or want of probable cause is an element of the cause of action, acting on advice of counsel is a good defense  6 Am. Jur. 2d, *Attachment & Garnishment* § 618 (1963); *Kentucky Farm Bureau Mut. Ins. Co. v. Burton,* 922 S.W.2d 385, 389 (Ky. Ct. App. 1996).  In order for advice of counsel to be defense to the tort of malicious prosecution, advice must have been given upon full and frank disclosure of facts.  *Blankenship v. Staton,* 348 S.W.2d 925 (Ky. 1961)*; Baber v. Fitzgerald,* 224 S.W.2d 135 (Ky. 1949). Defendant Creacy, in a sworn affidavit, states that the criminal complaint against Hanley was filed only after conducting an in-house investigation, discussing said investigation with Chevy Chaser's legal counsel, Gess, Mattingly & Atchison PSC, sharing documents with them, and making a full and fair disclosure of all the facts relating to Hanley's handling of her accounts.  Creacy's affidavit further states that Chevy Chaser's legal counsel advised Defendants to file the criminal complaint.  It appears that in all manners Defendants relied upon the advice of counsel in filing the criminal compliant.  This defense bars Hanley's recovery for malicious prosecution.

Accordingly, the Court finds that Plaintiff's malicious prosecution claim fails as a matter of law and, thus, must be dismissed.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendants' motion for summary judgment [Record No. 31] be, and the same hereby is, **GRANTED**.

This the 17th day of August, 2005.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**